## McCrea Petition

*Roy F. Walters*, for petitioner.

*John B. Nicklas*, for respondent.

BROSKY, J., April 4, 1966.—Myrtle A. McCrea, petitioner herein, is the owner in fee of 20 acres of land abutting on Reis Run Road in the Borough of Franklin Park, Allegheny County, Pa. On August 13, 1963, at a regular meeting of the North Allegheny Joint School Board, an eminent domain condemnation resolution, authorized by section 721 of the Public School Code of March 10, 1949, P. L. 30, 24 PS §7-721, was adopted as follows:

"WHEREAS, negotiations with one Myrtle A. McCrea, owner of an unimproved piece of land consisting of approximately 30 acres, more or less, situate on the easterly side of Reis Run Road, Franklin Park Borough, Allegheny County, Pa., for the purchase of approximately 20 acres of said tract of land, including the entire frontage along said Reis Run Road, have been unsuccessful; and

"WHEREAS, in the opinion of the North Allegheny Joint School Board the aforesaid approximately 20 acres of land now owned by the said Myrtle A. McCrea are necessary and suitable for school purposes, and it

is necessary to acquire the same by condemnation proceedings pursuant to Section 721 of the Public School Code. . .

"NOW THEREFORE, IT IS HEREBY RESOLVED, that Greenough & Greenough, Inc., Registered Engineers, be retained for the purpose of making a physical survey of the aforesaid 20 acres of land fronting on the easterly side of Reis Run Road in Franklin Park Borough, Allegheny County, Pa., and lying between the Kingridge Plan of Lots to the north and property now or formerly of Reed E. McCrea and Rosella McCrea, his wife, lying to the south now owned by the said Myrtle A. McCrea, and to designate and mark by appropriate stakes, pegs, or other visible markings, the boundary line of said approximately 20 acres of land, including, as aforesaid, the entire frontage along said Reis Run Road, and that, upon the completion of said survey and the physical designation and marking of the exact boundary lines thereof, the North Allegheny Joint School Board Directors shall enter upon, take possession of, and occupy such land so selected for school purposes, and thereafter use the same for school purposes in accordance with the Public School Code as aforesaid; provided, however, that reasonable accessibility to the remainder of the tract owned by Myrtle A. McCrea be provided by said registered engineers in the event that said survey discloses that there is no other means of access thereto . . ."

Except for an additional clause which is not pertinent in the present instance, section 721 of the Public School Code, supra, is a reenactment of section 605 of the Act of May 18, 1911, P. L. 309, which provided as follows:

"Whenever the board of school directors of any district cannot agree on the terms of its purchase with the owner or owners of any real estate that the board has selected for school purposes, such board of school direc-

tors, after having decided upon the amount and location thereof, may enter upon, take possession of, and occupy such land as it may have selected for school purposes, whether vacant or occupied, and designate and mark the boundary lines thereof, and thereafter may use the same for school purposes according to the provisions of this act . . ."

The order of procedure under this section was construed by the Supreme Court of Pennsylvania in Lewisburgh School District v. Harrison, 290 Pa. 258, as follows: "First, the proceedings to condemn may be instituted 'whenever the board of school directors of any district cannot agree on the terms of purchase with the owners of any real estate that the said board has selected for school purposes,' . . . The section then concisely sets forth the next procedure, that 'such board of school directors, having decided upon the amount and location thereof,'—that is the area of the land and its locus,—'may enter, take possession of, and occupy such land as it may have selected for school purposes'. . . . The next step, . . . was to 'designate and mark the boundary lines thereof,' and this was done with exact regard to legal requirements. Here, it would seem, was a regular and complete compliance with the law." According to the minutes of the school board meeting on July 6, 1925, the directors unanimously voted to secure title to the selected land by condemnation and appointed a committee, comprising three members of the board, to enter upon the land, with the solicitor and a surveyor, and take possession of the property. The said committee thereafter did enter upon the land, made a survey thereof and designated and marked its boundaries.

And in Spann v. Joint Boards of School Directors, 381 Pa. 338, the court found that the joint board, according to the minutes of its meeting on October 7, 1952, unanimously voted to take possession of 20 acres

adjoining the school property which had previously been acquired from Spann's farm, and on the following day a committee went with the solicitor and the surveyor and marked out and took formal possession of the condemned portion of the Spann property.

In these cases, an actual entry upon the land selected was made by the board, or a committee thereof, and the boundaries were marked at that time.

The case before us differs from the Lewisburgh and Spann cases, supra, in these respects: (1) According to the resolution of condemnation before us, the surveyors were to survey the property and mark the boundaries of the 20 acres which the school board had in mind, and (2) the school board would *thereafter* enter upon and take possession of the said acreage for school purposes. Thus, the second and third steps of procedure set forth in section 721 of the Public School Code were transposed in the present instance. Nor is there any evidence before us which shows that the school board ever did enter and take possession, for school purposes, of the 20 acres cited in the resolution of condemnation. The survey made by the appointed registered engineers was not completed until November 1963. It showed that if the school board took the 20 acres fronting on Reis Run Road, Mrs. McCrea's remaining acres could be reached only by way of streets in a plan of lots adjoining the rear of the proposed school acreage plus a 50 foot wide right-of-way along the northeasterly boundary of the proposed school property. In addition, the school board found that the 11 and 6/100th acres remaining to Mrs. McCrea could not easily be used for a plan of lots because of its terrain on one hand and its distance from utility lines on the other hand.

The board thereupon ordered that another survey be made showing the location of the school in the rear acreage, including therein the 11 and 6/100th acres; Mrs. McCrea's remaining propery would then be along

Reis Run Road. This survey was not completed until February 8, 1964. On the basis of the second survey, the school board, without entering upon the land and taking possession thereof as required by the Public School Code, again entered into negotiations with Mrs. McCrea. On April 30, 1964, she rejected both plans. She in turn, suggested that the school board take the whole acreage on the northerly side of Reis Run Road. Since so much land was not necessary for school purposes, the board continued to negotiate with Mrs. McCrea in order to buy one or the other part of her land at an agreed price. Finally, on November 3, 1964, the school board passed a resolution vacating and rescinding the condemnation resolution dated August 13, 1963.

This court's jurisdiction was invoked on September 3, 1964, by a petition for appointment of viewers filed by Mrs. McCrea. Viewers were appointed but no view or valuation of the property has been made; in fact, the order therefor was made returnable December 1965. On June 2, 1965, a petition was filed in behalf of Mrs. McCrea seeking a rule to show cause why the school board should not file a petition to discontinue the petition for appointment of viewers filed by Mrs. McCrea. Said petition was filed by the school board on June 7, 1965. However, in her answer, Mrs. McCrea included new matter denying the school board's authority to rescind its condemnation of her property in that the board had already taken possession and cannot now discontinue the viewer's proceeding. The said contention is patently without merit. We have already stated on the basis of the evidence that the school board had not, in fact, entered upon and taken possession, and marked the boundaries in accordance with the Public School Code, supra. Thus, the board had the right to vacate and rescind its condemnation resolution and to discontinue the condemnation proceeding subject to the payment by the board of such expenses, costs and dam-

ages suffered by Mrs. McCrea by reason of the board's acts: Reinbold v. Commonwealth, 319 Pa. 33.

In fact, at the hearing herein in July 1965, only testimony as to Mrs. McCrea's expenses was adduced. The claims against the school board were stated as follows:

| | |
|---|---|
| Counsel fees | $2,250.00 |
| Appraiser's fees | 350.00 |
| Travel and telephone expenses | 180.00 |
| Taxes | 304.45 |
| Loss of rent | 320.00 |

In March 1965, these expenses had been quoted as:

| | |
|---|---|
| Counsel's fee | $1,250.00 |
| Appraiser's fees | 350.00 |
| Property taxes | 304.45 |
| Loss of rent | 320.00 |
| Travel and telephone expense | 180.00 |

Article VII, sec. 723, of the Public School Code, supra, provides:

"When the board of school directors of any district shall enter upon and occupy lands for school purposes, . . . it or the owners of such premises, . . . may present a petition to the court of common pleas . . . setting forth the facts, giving a description of the premises taken by metes and bounds, and the names of all the owners thereof; whereupon the court shall appoint a jury of viewers, . . . and shall fix a time for a hearing when they shall view the premises . . ."

The evidence before us shows that Mrs. McCrea's petition for viewers did not comply with section 723 of the Public School Code for two reasons: (1) The school board had not, at any time, decided upon the amount and location of the land it would take from Mrs. Mc-Crea, and (2) the school board never entered and took possession of any part of said land. It appears, therefore, that the petition for appointment of viewers was

filed by Mrs. McCrea principally for the purpose of recovering her expenses.

There can be no doubt that Mrs. McCrea, during this extended period of negotiations, was entitled to be represented by counsel. She seeks for this purpose the sum of $2,250. The addition of $1,000 over and above the amount quoted as of March 1965, is based upon counsel's preparation of a rule on the school board to file a petition to discontinue the condemnation proceeding and the preparation of a brief in connection therewith. Since the viewer's proceeding was not, in fact, based upon the prerequisites set forth in section 723 of the Public School Code, we deem counsel fees in the amount of $1,750 to be sufficient to cover counsel's additional work in this matter.

An appraiser was also necessarily required by Mrs. McCrea in order for her to know whether she should accept any of the school board's offers; she is, therefore, entitled to an appraiser fee which the court fixes in the sum of $250.

The other damages sought by Mrs. McCrea are property taxes, lost rental on this property and her expenses in trying to save her land. Since the school board never entered and possessed any part of her land, the title remained in Mrs. McCrea together with the liability for real property taxes. Thus, she is not entitled to reimbursement for taxes she paid. Although Mrs. McCrea testified that a son paid her $320 per year for the use of said land for farming, no lease was in evidence, and the testimony showed that, because of illness, the son could not, and did not, raise crops on this land during this period. Thus, Mrs. McCrea is not entitled to be reimbursed for rental loss. She has claimed, however, $180 for her expenses in telephone calls and taxi fares to confer with the school board connected with keeping her acreage intact. The court finds that such expenses were properly incurred but the testimony shows that

the $180 was an estimate unsupported by proof. We, therefore, find that the sum of $100 is a proper reimbursement for these items which she is entitled to receive. An order will be entered accordingly.

### Order of Court

And now, April 4, 1966, it is ordered, adjudged and decreed that:

1. The petition of the Joint School Board of North Allegheny School District to discontinue the viewer's proceeding herein is hereby granted, subject to the payment by the said school board to Myrtle A. McCrea of the sum of $1,750 for counsel fees, appraiser's fee to Mr. Thomas McCaffrey, $250, and the sum of $100 to Myrtle A. McCrea for telephone and taxi expenses.

2. The costs are to be paid by the North Allegheny School District.