## Lewisburgh School District v. Harrison et al., Appellants.

*School law — Condemnation of land — Equity — Occupation of land—Title—Practice, C. P.—Act of May. 18, 1911, section 605, P. L. 309.*

1. The order of procedure for condemnation of land for school purposes, under section 605, of the School Code of May 18, 1911, P. L. 309, is (1) the selection of the site for the school, (2) disagreement with owner as to price, (3) decision on amount of land and location, (4) entry, taking possession and occupancy, being one and the same act, concurrently performed by going on the land, (5) designating and marking the boundary lines; after which steps may be taken to use the land for school purposes.

2. If a school board at proper meetings regularly proceeds in this method, it has acquired title and may then petition for viewers to assess the damages.

3. Section 605 contemplates an actual entry on the land, but the word "occupy" as used in the section does not mean that construction work shall have begun, or that the erection of a part or the whole of a building shall have taken place.

Argued May 10, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 51, Jan. T., 1927, by defendants, from order of C. P. Union Co., May T., 1926, No. 4, making absolute rule for appointment of viewers, in case of Lewisburgh Borough School District v. Jane C. Harrison et al. Affirmed.

Petition for appointment of viewers. Before POTTER, P. J.

The opinion of the Supreme Court states the facts.
Rule absolute.   Defendant appealed.

*Error assigned,* inter alia, was order, quoting record.

*Andrew A. Leiser,* with him *J. Fred Schaffer* and *Andrew A. Leiser, Jr.,* for appellants.—An entry by a corporation, invested with the right of eminent domain, upon private land without first making compensation to the owner or giving adequate security therefor, is a trespass; until such compensation is made or security given, the full title to the premises is in the private owner, and he may maintain ejectment for their recovery: Speer v. R. R., 255 Pa. 211; Phila., Newton & N. Y. R. R. v. Cooper, 105 Pa. 239.

The record shows no taking such as will pass title.

Marking boundaries by stakes does not meet the requirements of the statute: Speer v. R. R., 255 Pa. 211; Funk's Admrs. v. School Dist., 3 Sadler (Pa.) 177.

Under the facts in this case, the power to secure the required funds by taxation has not been established: Keller v. Scranton, 200 Pa. 130; Gilmore v. R. R., 104 Pa. 275.

*David R. Crossgrove* and *Harry M. Showalter,* for appellee, were not heard.

OPINION BY MR. JUSTICE FRAZER, June 25, 1927:

The school district of the Borough of Lewisburgh, Union County, presented a petition to the court of common pleas for a rule upon appellants to show cause why viewers should not be appointed to assess damages for land owned by appellants which the school district, in the exercise of the power vested in it by section 605 of the Act of May 18, 1911, P. L. 309, known as the School Code, had entered upon, taken possession of and occupied for school purposes. Defendants opposed the action; the court, however, after hearing, made the rule

absolute, and from that decree this appeal is taken. Various questions were at issue at the trial relative to the validity of ordinances passed by the Lewisburgh borough council vacating streets and alleys on the land in controversy, which at the time of the taking by the school district comprised a plotted plan of lots; the disposition of these questions by the trial judge was apparently accepted by the parties, so that we have assignments of error by appellants relating only to the title to the land as acquired by plaintiffs and to the manner and adequacy of the proceedings to condemn.

We have therefore before us the single question, into which appellants' four assignments of error resolve themselves, viz.,—whether or not the school district obtained title to the land in controversy by proceeding as it did under the provisions of section 605 of the School Code. The task of reaching a determination of this question is greatly simplified and aided by inclusion in the record of the case, as a part of the undisputed evidence at the trial, of the minutes of the meetings of the school board, in which the progressive steps taken by the board to condemn the land are successively set forth. Nevertheless, despite the inclusion of these important records of board meetings, appellants contend, and so assert in their printed brief, "the entire record is barren of any evidence of *actual* possession taken of any of these lots, or of any *occupancy* of the same, or *use* of the same, by the school district at any time for any purpose." If this contention is to be sustained it must be found that either the minutes are improper and invalid, or that the school board failed to proceed in the manner required by the School Law in its efforts to secure title to the land by condemnation.

Section 314 of the School Code directs that the secretary of the school board "shall keep a correct and proper record of all the proceedings of the board." We find in the record before us a series of minutes of meetings of the school board set forth chronologically from the in-

ception of the plan to acquire land and erect a high school building thereon, down through the period covered by the present litigation. We have examined these minutes and see no manner of fault on the part of the secretary in setting them down; and it may be safely inferred that, if they were defective in any material degree, the alert scrutiny of the court and of counsel at the hearing would have disclosed such defect.

We learn from these minutes, as found in the record of the case, that at least five years before the beginning of this litigation the necessity of the purchase of land and the erection of a high school building had been seriously discussed by the board, and, at least two years before definite steps in that direction were taken, a tentative selection was made at a meeting of the board in January, 1923, of the land to which the title is here in dispute. Later minutes show that at successive meetings negotiations were under way for the acquisition of this property and the question as to price considered in detail. Finally, at a session of the board of directors, held June 11, 1923, a definite and final selection of the land now in controversy, a plot of lots known as Harrison's Addition, as a proper site for the proposed school structure, was made by a unanimous vote of the members of the board. Subsequently, at a meeting held November 10, 1924, a specific offer of the amount the school district would pay for the property was unanimously agreed upon by the directors. This price upon being offered was not accepted by the owners, appellants here, and, after further conference and correspondence, another price was fixed upon by the board at a meeting held, as the minutes show, June 8, 1925, as the maximum sum the school district would pay for the land; and "further," as the same minutes set forth, "that a reply to the offer for said lots be requested from the owners of said lots by June 20, 1925; and in the event that no reply is received by that time, or the owners refuse to accept the amount offered by the board, then we proceed

after June 20, 1925, to condemn said lots for public school purposes as provided by Act of Assembly of the Commonwealth of Pennsylvania."

This maximum offer was not accepted by the owners of the property, and at the subsequent board meeting held July 6, 1925, the directors by an affirmative vote definitely decided to secure title to the land by condemnation proceedings as provided by the School Code, and appointed a committee, comprising three members of the board, to enter upon the land, with the solicitor and a surveyor, and take possession of the property. This motion, as unanimously adopted by the board, is plain and explicit. It directs that, since the school directors and the owners of the lots "cannot agree on terms of purchase of lands for school purposes so owned by Jane C. Harrison and Oscar Hartel, that Harry Stahl, J. F. Groover, James L. Miller, directors, Walter Frick, surveyor, and H. M. Showalter, counsel for the school board, be authorized and delegated on behalf of said board of directors to enter upon, take possession of and mark the boundary lines of lands for school purposes." Conformably to this formal decision and direction of the school board, the committee appointed, comprising three of the members of the board, the solicitor and a surveyor, made an entry together upon the land, made a survey of it and designated and marked its boundaries by driving oak stakes in the ground at the several corners of the tract. A record of that proceeding and the proposed action for the appointment of viewers are set forth in the minutes of the meeting of the board held July 17, 1925.

We find thus in the record before us an unbroken chronological recital, in the minutes, of the successive steps taken by the school board to acquire title to the land in question; by offer to purchase at a named amount, and following a refusal to accept the price offered, by condemnation proceedings. The learned trial judge found this procedure in accord with the requirements of the provisions of the School Code governing the

acquisition of title to land by a school district without agreement of the owners and we concur in his conclusion.

Section 605 of the School Law provides an orderly and progressive line of action to be followed by a school board in such transactions. First, the proceedings to condemn may be instituted "whenever the board of school directors of any district cannot agree on the terms of purchase with the owners of any real estate that the said board has selected for school purposes," that is, there must have been a selection of the site and final disagreement as to the consideration. That situation was encountered here, as the evidence shows. The board selected the land, offered a maximum price which was rejected, indicating clearly the impossibility of reaching an agreement upon the terms of purchase. There certainly was no deviation from the requirements of the law up to this point. The section then concisely sets forth the next procedure, that "such board of school directors, having decided upon the amount and location thereof,"—that is the area of the land and its locus,— "may enter, take possession of, and occupy such land as it may have selected for school purposes." As the minutes show, this further proceeding was carried out with scrupulous care in detail by the board. The next step, in accordance with the directions of the School Law, was to "designate and mark the boundary lines thereof," and this was also done with exact regard to legal requirements. Here, it would seem, was a regular and complete compliance with the law. But appellants contend the terms of the law were not fulfilled, and, in their printed brief, as stated above, claim there was no "actual possession," "occupancy" or "use of the same, by the school board at any time for any purpose." If what was done by this school board in its successive steps for securing title for the school district of this land, as set down in the minutes, and corroborated by oral testimony at the hearing in the court below, was so

inconclusive and ineffectual, what then can possibly be the meaning and intent of section 605 of the School Code? What further was to be done, under the law? Appellants assert "all that the school board have done was to put stakes at the corners of the lots they selected." The evidence, as recited above, manifestly disproves that claim. It is true, the school directors did not evidently parade as a body, move solemnly onto the land and take possession of it in the formal manner of early livery of seizin. Who is there to tell us what shall be the precise and only maneuvers, physical or symbolical, to be performed to constitute entry, possession and occupancy of this particular tract of land? Certainly the School Code does not inform us. There was not in this case an entry made upon the land merely for examination and survey. The school board was not initiating a project; they were completing a long settled plan. A formal decision had been made by the board to take and acquire title to this particular tract, of which the location, the extent and its adaptability for school purposes had been discussed and agreed to at least two years before possession was taken. It was not necessary for the board at so late a date as June, 1925, to examine it; there was no information which they needed as to its advantages as a site for a school building and playgrounds, in connection therewith, which they did not have at least five years before the condemnation proceedings were begun, as the evidence repeatedly shows. They were completing their well arranged plan to acquire title to this property. Having failed to purchase the land, they resorted to the procedure provided by law. They entered upon it. What in fact is meant by "entry" as related to the acquisition of real property? In current interpretation it seems too often to carry any vague significance that may be spun out of it by an affectation of subtle distinctions. It is well said in 20 C. J. 1274, "the word has such a variety of meaning, not only in the jargon of law, but in its ordinary lay acceptance, that it

would be obviously improper to assign a meaning not sanctioned by the sense in which the word is used." Clearly the sense applied to the word in the School Law intends an actual entry upon the land. An analysis of the provisions of section 605 of the School Code will show the extreme fallacy of the claim of appelants that the action of the board in making entry and taking possession and occupancy did not meet the requirements of the statute. It is there provided that "the board of school directors, after having decided upon the amount and location thereof, may enter upon, take possession of, and occupy such land," and shall, "after" entry, possession and occupancy, "designate and mark out the boundary lines thereof." Manifestly from the terms of the section, the designation and the marking are not to be made until "after" entry, possession and occupancy. The word "occupy," as used in section 605, either means that "occupancy" is to be coincident and simultaneous with "entering upon" and "taking possession of," or it must signify construction work, such. as excavation for a foundation, or erecting a part or the whole of a building; and if this latter is to be taken as the true interpretation of the section, then we must accept the wholly untenable and also absurd conclusion that not until some actual construction work is performed, shall the exact area and limits of the land, and the directions of the courses, the distances between the corners and the actual boundary lines be ascertained and established; not until then may the boundaries be designated and marked out. We have yet to learn, where common sense prevails, that land is to be built upon without having first ascertained the area and boundaries of the tract to be so used. No such twisted interpretation or construction may be given to the terms of section 605. What it does in fact intend, as we understand it, is that the entry, taking and occupancy are one and the same act, simultaneously performed. And "thereafter," following the performance of that coincident act,—within no pre-

scribed period of time,—the school district "may use the same for school purposes." It is plain therefore, that the order of procedure for condemnation proceedings as set forth in section 605 of the School Law follows this line: (1) the selection of the site; (2) disagreement as to price; (3) decision on the amount of land and location; (4) entry, taking possession and occupancy, being one and the same act, concurrently performed by going upon the land; (5) designating and marking the boundary lines; after which steps the school district "may use the same for school purposes." This was the order followed by the school district in the present case, and after such action may come the petition for viewers. These unequivocal acts and declarations, as shown by the minutes of the school board and the oral testimony at the trial, clearly constituted an actual taking under the power of eminent domain, so as to vest in the school district title to the land in controversy. The title of the owners was divested by these proceedings, which constituted an absolute, permanent and legal appropriation of the land for school purposes. As to the matter of the "use" of the land in our opinion what the trial judge said in that respect is entirely sufficient: "It is maintained by counsel for the petitioners that the school board has not acquired title to these lots for the reason that they did nothing further on the land after the entry was made. We fail to find in the act any language requiring them to do anything further, and, in passing, we might as well say that had they done anything further, steps would have undoubtedly been taken to restrain them from doing anything further."

Judgment affirmed at appellants' costs.