## Eliason v. School District of Springfield Township

*James L. Rankin* and *Robert E. Masters,* for plaintiffs.

*Edward F. Cantlin,* for defendant.

*Edward H. Cushman,* for additional defendant.

REED, JR., J., December 22, 1970.—This is a taxpayers' suit to declare void an alleged contract between the School District of Springfield and the architectural firm of Stewart, Noble, Class and Partners.

This suit raises the issues of:

1. Whether a contract for architectural services must be advertised and bid.

2. In what manner must the school board enter into a contract for architectural services.

3. Must provisions respecting workmen, minimum wages, or nondiscrimination be included in such a contract.

The School District of Springfield is of the third class and its board of school directors consisted of seven members at all relevant times. On December 11, 1967, the school board, at a public meeting at which six school directors were present, adopted a resolution to engage the architectural firm of Stewart, Noble, Class & Partners as architects for the preparation of plans and specifications for additions and alterations to the Springfield Senior High School. After completion of plans and specifications, the contract was sub-

sequently to be assigned to the school district authority which would then reimburse the school district for amounts paid to the architect. The minutes of this meeting indicate that all members of the board present voted for the resolution. Shortly thereafter, the architectural firm sent a contract form to the Superintendent of the Springfield Township School District.

On February 16, 1968, this contract was signed, pursuant to the resolution of December 11, 1967, for the school district by Richard D. Carter and Elizabeth L. Pusey, the president and secretary, respectively, of the board of school directors, and by Frederick A. Long, who executed the instrument in the name of the architects. Richard D. Carter was the president of the school board and was present at the meeting of December 11, 1967.

On August 11, 1969, this contract was assigned to the school district authority, pursuant to the resolution. The contract form used for the contract in question was the standard form of agreement as prepared by the American Institute of Architects and the charges set forth therein were the same or even less than the fees prescribed by the Pennsylvania Society of Architects; six percent of new construction and 10 percent of alterations. We find both the fees and the time of payments as being reasonable.

The architectural firm was paid $119,055 by the school district on six invoices for portions thereof submitted to and approved by the school board. Subsequently, the school district was repaid this amount by the school district authority. Invoices went through the business office where a check was prepared but unsigned, and the item thereafter forwarded to the school board for approval before issuance of the check.

The board members did not actually see the contract form executed by the parties. Only Mr. Carter, Mrs.

Pusey and Dr. Grove, the superintendent, were present at its signing. The board members did not actually have the invoices brought specifically to their attention at the meetings of the school board.

The first of plaintiffs' main contentions is that the contract for architectural services should only be awarded upon advertising and the submission of bids. Plaintiffs advance the theory that section 751 of the Public School Code of March 10, 1949, P. L. 30, 24 PS §7-751, requires this procedure (as it clearly does for building contracts) with regard to architectural services, since the statute says that:

"All construction, reconstruction, repairs *or work of any nature* . . ." shall be entered into with the lowest responsible bidder. (Italics supplied.)

The reported cases prior to the 1949 Act all indicate that under the preceding 1919 Act the architect's contract did not have to be awarded on bids: Hibbs et al. v. Arensberg et al., 276 Pa. 24, 119 Atl. 727 (1923); Stratton v. Allegheny County, 245 Pa. 519; Philadelphia County v. Pittsburgh, 253 Pa. 147; and Sheets et al. v. Armstrong et al., 307 Pa. 385.

We see no change in the Act of 1949 which indicates any change in this rule, nor have plaintiffs cited any case in support of such a notion. "Work of any nature" does not include professional services, and never has with regard to municipalities.

The board should be free to choose the best available services for the drawing of plans for construction work; the contracts for such construction must be advertised for bids. Requiring advertisement and bid procedure to enter into contracts for professional services has never been public policy for the obvious reason that it could well lead to a lessening in quality of the services necessary, without any proportionate savings, and perhaps with the unwanted result of increas-

ing the cost of the construction contract which is the matter of prime concern. We, therefore, find that the architect's contract does not have to be advertised and bid upon.

Upon the removal of this keystone argument, the rest of plaintiffs' argument falls.

The following section, section 752 of the Public School Code of 1949, 24 PS 7-752, requires that "all contracts" must have a stipulation or provision that only "competent and first class workmen and mechanics" shall work on the job. It would be a useless gesture to put such a provision in the architect's contract, because the architect does not use workmen and mechanics. Aside from that, it is obvious that section 752 refers only to contracts let on bids pursuant to section 751. Since this was not such a contract, section 752 cannot apply. The same is true of plaintiffs' arguments as to stipulations for minimum wages, provisions requiring residency by workmen and prohibition against discrimination, all of which by their own terms do not apply to this contract and which would only apply to a type of contract which must be let on bids under section 751.

The only remaining argument of plaintiffs is that even if the bid procedure is not required to contract for architectural services, still this contract is void for two reasons.

A. The resolution authorizing the contract was not properly adopted because its adoption was violative of a section of the Public School Code because it was not by roll call vote recorded.

The Public School Code of 1949, 24 PS 5-508, in part, provides as follows:

"The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted,

shall be required in order to take action on the following subjects:

"Entering into contracts of any kind, including contracts for the purchase of fuel or any supplies, where the amount involved exceeds one hundred dollars ($100).

"Fixing salaries or compensation of officers, teachers, or other appointees of the board of school directors.

"Failure to comply with the provisions of this section shall render such acts of the board of school directors void and unenforcible."

The school board vote in December 1967 was duly recorded within the act, since all six members present voted for the resolution: there was no need to record each vote separately; there is no question who voted for it; all six did: Spann v. Joint Boards of School Directors, 381 Pa. 338, 113 A. 2d 281, (1955).

B. The school board did not vote for or authorize this contract, because the resolution provided, inter alia:

"RESOLVED, that the Board of School Directors of Springfield Township engage the services of Stewart, Noble, Class and Partners, as architects for the preparation of plans and specifications for additions and alterations to the Springfield Senior High School with the understanding that when the plans and specifications are completed, the Springfield Township School District Authority of Delaware County will be assigned the Board's contract with the architect and will reimburse the School District for any amount paid the architect for services performed."

Plaintiffs' position might be well taken if that were all the resolution provided for. In fact, the resolution is rather more lengthy and includes specific reference to "proceed immediately with construction," and re-

peated references and directions to that end for the board and the authority, at all times indicating the board's purpose to control planning, leaving construction and accomplishment of the plans to the authority. Plaintiffs maintain, however, that the resolution limits the relationship of board and architect to drawing of plans and specifications, which is absolutely true; hence, when the subsequent contract between them reached out to embrace physical construction and supervision of contractors, etc., it exceeded the resolution and is, therefore, null and void; which is not true. The resolution must be read as a whole and its meaning and purposes gathered therefrom to define its authority.

When so read, we find the board intended primarily to build an addition to, and alterations of, a school building. This is the overwhelmingly apparent reason for the resolution, not the mere hiring of an architect to do the exploratory work, which had already been done. With that in mind, the board secondarily wanted to hire an architect for the job, and in the regular context of financing this type of work, as required by law, to define the areas of responsibility between the parties and the assignee.

The board engaged this architect for the whole job, but clearly and precisely set forth that its relationship with the architect would cease at the completion of plans and specifications. Thereafter the contract would be assigned to the "Authority," who would thereupon become the real contracting party, upon acceptance of the assignment and the contract as a later step.

The board, through its proper officers, executed the contract in February 1968, in effect for itself as to those aspects authorized and for its prospective assignee, the authority, as to the remaining aspects. This was entirely within the scope, purview and intent of the resolution of December 1967.

It is correct that as to the board, the architect has no right of recovery beyond plans and specifications, but as to the board or the authority that does not render the contract void and illegal. The contract must be read under the resolution, and when so read it means:

(a) An architect was engaged for the project;

(b) The architect was to draw plans and specifications for the board and ultimately the authority;

(c) The authority would be assigned the plans and specifications to carry out the construction;

(d) The authority would be responsible for all costs, expenses, and charges in connection with the whole project, including the architect's charges for the plans and specifications; but

(e) If the project did not succeed or carry forward to completion, the board could only be and would only be responsible for payments to the architect for the plans and specifications.

This is as far as the board bound itself when it adopted the resolution and its officers signed the contract pursuant thereto.

Any other interpretation is not only out of context and step, but would in all probability be a great deal more expensive and costly to the taxpayers of Springfield, as well as the many other districts and municipal bodies that follow like procedures for capital improvements and construction.

## CONCLUSIONS OF LAW

1. The agreement entered into between Springfield Township School District and Stewart, Noble, Class & Partners, under date of February 16, 1968, for architectural services in respect to additions and alterations to Springfield Senior High School was duly authorized by the board of school directors.

2. The members of the board of school directors, in authorizing and executing the aforesaid contract and

in making payment to the architect from school district funds for services rendered to the school district by the architect pursuant to said contract, acted legally and in good faith, and no loss or damage to the school district resulted from the actions of such school directors.

3. No member of the board of school directors was guilty of bad faith, fraud, improper motivation or abuse of discretion in authorizing or executing the contract for architectural services or in authorizing payment to the architect from school district funds for services rendered to the school district by the architect pursuant to said contract.

4. The amounts paid by the school district to the architect for services rendered to the school district pursuant to the aforesaid contract were not in excess of the fair and reasonable value of such services.

5. The competitive bidding requirements of the Public School Code of the Commonwealth of Pennsylvania are inapplicable to this contract for architectural services.

6. The Public School Code does not require the inclusion of provisions respecting workmen, minimum wages or nondiscrimination in this contract for architectural services.

## DECREE NISI

And now, December 22, 1970, the complaint of plaintiffs, Harvey J. Eliason, Robert M. Bender and Joan Kuhn, is hereby dismissed as to all defendants.

The parties are given 20 days to file exceptions hereto and if none are filed, this decree nisi shall be entered as a final decree on praecipe of either party.

## OPINION SUR EXCEPTIONS

REED, JR., September 3, 1971.—This matter was heard in equity and an adjudication filed on Decem-

ber 22, 1970, with decree nisi. Plaintiffs filed exceptions, which were argued before the court en banc.

The notes of testimony and briefs of the parties have been reviewed, and we find the issues, with the exception of one, to be the same as those already considered by the chancellor in his adjudication of December 22, 1970. The exception consists of argument by plaintiffs' counsel contained in the supplement of the brief in support of plaintiffs' exceptions to opinion, conclusions of law, and decree nisi.

Plaintiffs argue that certain portions of the findings of fact and conclusions of law of the opinion of Catania, J., in the case of The Township of Springfield et al. v. The School District of The Township of Springfield, no. 12825 of 1968, Delaware County, Pa., are relevant and pertinent to this case. We do not agree. The case cited involved the acquisition of land, a totally different factual situation. The factual situations are plainly distinguishable and present different issues to be decided. Therefore, the opinion and decision in that case is not controlling of the case now before us, nor can those facts be read into this case: Franklin Life Insurance Company v. Franchock, 202 Pa. Superior Ct. 438, 195 A.2d 874 (1963); Silvestri v. Slatowski, 423 Pa. 498, 224 A. 2d 212 (1966).

We do not find any reasons now advanced which indicate that the chancellor's determination of the issues should be changed. The adjudication adequately states the issues raised, and properly resolves them.

### ORDER

And now, September 3, 1971, we accordingly order and decree:

1. The exceptions filed by plaintiffs are dismissed.
2. The adjudication of the chancellor entered

December 22, 1970, with findings of fact and conclusions of law is hereby adopted as the final adjudication of the court.

3. The decree nisi entered December 22, 1970, by the chancellor is hereby entered as the final decree of the court.