Frank Kennedy, Nancy Komondor, Frank Irey, Jr., George Crompton, Jr., Kasmier Sala, Rose Venanzi and Edwin Spadafora, Appellants, *v.* Ringgold School District, Appellee.

Argued June 5, 1973, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Frank A. Conte*, with him *Lee P. Symons*, for appellants.

*George B. Stegenga*, for appellee.

OPINION BY JUDGE BLATT, August 31, 1973:

The appellants, who are taxpayers in the Ringgold
School District (District), brought this action in equity
to enjoin the District school directors from proceeding
with the implementation of their Long-Range Develop-
ment Program, including the building of a new high
school.

The District was organized in 1964 and is composed
of the third class City of Monongahela, the Boroughs
of Donora, New Eagle and Finleyville, and the Town-
ships of Carroll, Union and Nottinghorn. It has a stu-
dent population of 6,804 pupils, housed in 16 school
buildings, which include eleven elementary schools,
three junior high schools and two high schools. In
July of 1968, the District undertook the preparation
and development of a Long-Range Plan, which was

completed and officially adopted on June 26, 1969. Pursuant to this Plan eight school buildings were to be abandoned and a new high school was to be built, while the present high schools were to be converted into elementary centers and two of the junior high schools were to become middle schools. Following adoption of the Plan, the District gave preliminary approval to certain building projects, architects were hired and various building plans were considered. On March 9, 1972, the School Board approved a set of development projects prepared by the architects.

In May of 1972 the appellants brought this action in the Court of Common Pleas of Washington County, and, following the taking of extensive testimony, it was stipulated between the parties that, instead of having a preliminary decision by the chancellor, the case would be submitted to the court en banc. This was the same procedure as was followed in *Allen v. Uniontown Area School District,* 4 Pa. Commonwealth Ct. 183, 285 A. 2d 543 (1971), and apparently, as in that case, this "approach was utilized so that any subsequent appeal could be filed immediately before this Court." 4 Pa. Commonwealth Ct. at 185, 285 A. 2d at 544. Following argument, the lower court issued an adjudication finding that the school directors did not commit an abuse of discretion and that there were no legal grounds upon which to base a grant of injunctive relief. The appellants filed exceptions to this adjudication, which were stricken, and this appeal was thereafter brought. The District has not yet accepted any bids nor begun any construction on the proposed high school or any other project.

Pursuant to Sections 501 to 503 of the Public School Code of 1949, Act of March 10, 1949, P. L. 30, 24 P.S. §§5-501 to 5-503, the board of school directors is given the authority to establish, equip, furnish and maintain schools, including high schools. When a court is asked

to interfere with or limit this authority, however, it must first determine what judicial function has been vested in the courts of common pleas in such actions for the equitable relief sought, and our Supreme Court has stated in *Landerman v. Churchill Area School District*, 414 Pa. 530, 534, 200 A. 2d 867, 869 (1964) : "In order for a court of equity to grant relief, it must clearly be shown that the school board acted outside the scope of its statutory authority or not in good faith. 'It is only where the board transcends the limits of its legal discretion that it is amenable to the injunctive processes of a court of equity: Detweiler v. Hatfield Borough School District, 376 Pa. 555, 566, 104 A. 2d 110; Regan et al. v. Stoddard et al., 361 Pa. 469, 474, 65 A. 2d 240.' Spann v. Joint Boards of School Directors, 381 Pa. 338, 349, 113 A. 2d 281, 287 (1955)." Our own Court has stated in *Dochenetz v. Bentworth School District*, 6 Pa. Commonwealth Ct. 173, 185 (1972) : "This area of the law is one of narrowly drawn lines and subtitles. Courts must be wary on encroaching upon the legislative prerogative. *Only in those instances wherein arbitrariness, caprice and wrongdoing characterizes a board's act, will a court interfere. Short of that point is the line wherefrom 'discretion' extends. Arbitrariness and caprice must not be confused with bona fide differences of opinion and judgment.* The former are indices of motivation and intention, while the latter, by definition, concede proper motivation and intention and differ only as concerns methods and modes of achievement and realization." (Emphasis added.) In addition, see *Myers v. Newtown Township School District*, 396 Pa. 542, 153 A. 2d 494 (1959) ; *McKinley v. Luzerne Township School District*, 383 Pa. 289, 118 A. 2d 137 (1955) ; *McLaughlin v. Lansford Borough School District*, 335 Pa. 17, 6 A. 2d 291 (1939) ; *Lamb v. Redding*, 234 Pa. 481, 83 A. 362 (1912).

It is apparent that a number of the challenges to the plan adopted by the school directors are based on the premise that the directors abused their discretion. We cannot agree. Possibly the planning done by the directors, their consideration of alternatives, their computation of costs or their preparation of the plans might have been less than perfect, but, essentially, the appellants' allegations and the testimony of their witnesses demonstrate merely a difference of opinion between the parties as to the best course to follow in each of these areas. They do not indicate an abuse of discretion on the part of the directors. Indeed, we find very appropriate to the facts in this case the following quotation from *Allen v. Uniontown Area School District, supra,* 4 Pa. Commonwealth Ct. at 188, 285 A. 2d at 546. "We have painstakingly read and reread the voluminous record in this case and we have failed to discover and confirm the presence of conduct 'so arbitrary to amount to an abuse of discretion' as alleged by [appellants]. . . . Each and every instance set forth by [appellants] as an example of [appellee's] abuse of discretion appears to us to be no more than a difference of opinion. Indeed, a school board is required to investigate, to inquire, to study, to ponder and to finally decide the question, i.e., to exercise its lawfully mandated discretion. This process leading up to the actual exercise of discretion cannot be unending. To demand such an unending process is in itself an arbitrary and capricious and wholly unreasonable expectation. There must be a time after which a school board is entitled to arrive at a decision and thereafter enter into an executory stage, without being stymied at every turn by the differences of opinions of others. The instant [appellants] have in no way carried the very onerous burdens placed upon them by our case law."

The appellants have also, however, alleged that various actions on the part of the directors constituted

unlawful conduct. They claim that, by resolution adopted on November 12, 1970, the directors authorized the selection of an architect, subject to the provision that no bills were to be incurred until a contract was executed and delivered. In fact, however, it is claimed that, when the contract was actually executed and delivered on February 9, 1972, bills had already been furnished by the architect in excess of $200,000.00, and over $100,000.00 had been paid.

An examination of the record indicates that, on May 13, 1971 and on August 19, 1971, the directors unanimously voted to authorize the signing of the contract with the architects, and that the architects were at once encouraged to proceed with their work. The contract itself was approved by a majority of the directors (in fact unanimously) as required by Section 508 of the Public School Code, 24 P.S. §5-508.

While there may be no need for a contract with an architect to be in writing as required for contracts under Section 751, 24 P.S. §7-751,[1] if an award of work has been made and a written contract is required but has not yet been entered into, the school board is merely authorized at its discretion to revoke the award. *Crouse, Inc. v. Braddock Borough School District*, 341 Pa. 497, 19 A. 2d 843 (1941). It is under no obligation to revoke. And where, as here the directors have unanimously approved entering into a contract, have encouraged the architect to begin work and subsequently have executed a written contract, it would not be unlawful or an abuse of their discretion (in the absence of fraud) for them to pay for work actually rendered before the written contract was in fact executed.

The appellants also contend that the directors expended an additional $9,500.00, without officially act-

---

[1] See *Eliason v. School District of Springfield Township*, 54 Pa. D. & C. 2d 52 (1970), and cases cited therein.

ing in approval thereof, when the architect was requested to draw up some alternative plans. While it would appear that the expenditure in question actually was authorized formally on May 13, 1971, it is not necessary that there be a formal vote of the school board so as to validate a contract it has entered into, provided that approval by the members is evidenced in some other manner. *Mullen v. DuBois Area School District,* 436 Pa. 211, 259 A. 2d 877 (1969). It seems clear that the board here did approve the expenditure questioned.

The appellants contend, too, that the plan will not provide for proper racial balance. The directors contend, however, that completion of the plan will end racial imbalance in the high school and will greatly alleviate the problem of balance in the middle and elementary schools. We see no evidence in the record that the directors acted unlawfully or abused their discretion in reaching their decision, and no such unlawful activity or abuse of discretion may be inferred from the mere fact that the appellants have reached a different conclusion.

The appellants also object to the practice of the District in transferring $90,600.00 to the general fund at the end of each fiscal year, which money had originally been set aside for site acquisition. They contend that, pursuant to Section 692 of the Public School Code, 24 P.S. §6-692, money in a capital reserve fund may only be used for certain purposes. This is true, but the $90,600.00 was not part of any capital reserve fund. In fact, the District has never had such a fund, but, because of delay in site acquisition, this money remained unused.

The appellants likewise contend that, pursuant to Section 609, 24 P.S. §6-609, funds which are set apart for a specific purpose cannot be transferred without a resolution approved by two-thirds of the members of the school board. Again, this is correct, but there is

no evidence in the record that such approval by the board was not given.

The final allegedly unlawful act cited by the appellants is that the cost of the proposed plan would exceed the debt limitations as set forth in the Local Government Unit Debt Act, Act of July 12, 1972, P. L. , No. 185, 53 P.S. §11-101 et seq. Certainly, if this act is applicable to the District (as the lower court so found), its provisions must be followed. To this date, however, no bids have been solicited or advertised, and, on the present state of the record, it is impossible to decide whether or not the cost of the program will exceed the limitations of the act regarding non-electoral debt. If it is ultimately determined that the electoral debt provisions of the act do apply, and if the District then refuses to follow its procedures, the appellants may at that time seek judicial recourse as provided in the act.

We must emphasize that we are not here considering the wisdom of the District's plan, but simply its legality, and we note with approval the following statement of the court below: "From a search of the voluminous record in the present case, we are unable to discover and confirm the presence of conduct on the part of the Ringgold School Directors so arbitrary and capricious as to amount to an abuse of discretion, as alleged by the Plaintiffs. A school board is required to investigate, to inquire, to study, in order to finally decide and exercise its lawful mandated discretion. All of these things we think the Ringgold Board did here. It had this plan under study for the last several years, and a decision had to be made by the board. They made a final decision and judgment. Even if there exists a better plan, as contended by the Plaintiffs, this does not amount to an abuse of discretion on the part of the Defendant."

We find no basis for enjoining the implementation of the District's Long-Range Plan and, therefore, we affirm the order of the court below.