## Demmert v. Wissahickon School District (No. 2)

*Stephen R. Signore, Jr.,* for plaintiff
*Jeremiah J. Cardamone,* for defendants.

BROWN, *J.,* March 31, 1980—On January 2, 1980 this court issued an order enjoining temporarily the lump sum payment of $300 by the Wissahickon Board of School Directors to all employes. This injunction issued on the authority of section 1152 of the Public School Code of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1152. The payment was to be made pursuant to the following resolution passed by the board on December 3, 1979:

That all active, regular Wissahickon School District Employees shall receive a $300 temporary lump sum payment, prorated, based on full time continuing employment as of January 4, 1980, and that said temporary lump sum payment is to be made on January 4, 1980.

The resolution was found invalid because it called for the payment to *all* school district employes, whereas section 1152 permitted the payment of temporary or emergency payments only to the "teaching or supervisory staff." Since the resolution was not severable, payment to any employe was enjoined.

Defendant School Board has filed a motion to dissolve the injunction relying on the Public Employe Relations Act of July 23, 1970, P.L. 563, 43 P.S. §1101-101 et seq. Plaintiff taxpayers, on the other hand, seek a permanent injunction contending (1) that the action of the board in passing the resolution of December 3, 1979 was arbitrary and capricious; (2) that the payment would cause a budgetary deficit; and (3) that the Public Employe Relations Act does not amend section 1152 of the Public School Code so as to authorize payment to employes other than teachers and supervisors.

The resolution in question had its inception in late September or early October, 1979 when a board member approached the superintendent, expressed his concern about the effects of inflation on the teachers and other employes of the district and asked if there were funds sufficient to make a one-time payment to all employes. A short time later the superintendent reported that there were such moneys available, citing among other reasons unanticipated interest income on short term investments, a product of current high interest rates. The $300 figure came as the recommendation of the superintendent. Between the first meeting of the board on October 8 and the passing of the resolution on December 3, the members met in closed session at least three times for a discussion of the propriety of the payment. During the course of those meetings there was discussion of the amount of the

payment to each employe, whether it should be a fixed sum or a percentage of salary, the total cost to the district (estimated at $123,000 to $126,000), the effects of inflation on the employes and the means of funding the payment. In addition, a legal opinion was sought and obtained from the solicitor approving the payment. By a vote of 5 to 4 the resolution was passed on December 3, 1979.

All but one of the board members testified at the hearing on the injunction on March 3, 1980. Their testimony disclosed a variety of understandings, both as to the meaning of the resolution and the source of funds to implement it. Some thought it applied to all employes, full and part time; others thought it applied only to full time employes. Some thought it applied to supervisors and others not. Some thought income and social security taxes would be deducted and others gave no consideration to that. As to the source of funds to underwrite the payment, the minutes of the December 3 meeting disclose that much reliance was placed upon the receipt of additional revenue from the unusually high interest rate, as well as tight management controls and increased efficiency in expenditures by the administration. The testimony of the board members disclosed varying opinions as to the importance of the additional interest, unused budget moneys for salaries for teachers not hired and management efficiencies in funding the payment.

In point of fact, the testimony of the superintendent (which followed that of the board members) disclosed that the extra interest income and savings from management efficiencies were inconsequential when compared to the extraordinary surplus built into the budget itself. For example, as of November 30, 1979, the projected fiscal year-end

salary surplus was $459,088, for all categories of employes, while only $126,685 is needed to pay each of the employes $300. The largest single category is, of course, teachers and the projected salary surplus there is $274,014, only $85,210 of which would be needed to pay them each $300. But alas, even more money is available because under section 687, 24 P.S. §6-687, of the code, the board has the power to transfer "any unencumbered balance" (surplus) from one class of expenditure to another. The sum total of such unencumbered balances anticipated at the end of the fiscal year was $1,278,411 as of November 30, 1979. So, presumably all (or certainly most all) such funds are or will be available to make the proposed $300 payment to all employes, barring some catastrophe.

So, far from squeaking through, as reliance on the unexpected interest might imply, there was never any question but that the district had sufficient funds to make the $300 payment. It could have made a much larger payment with no fear of exceeding the budget.*

The recitation of these figures is sufficient to dispose of plaintiffs' claim that the payment would cause a budgetary deficit. As to plaintiffs' first attack on the action of the board, it is "an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; . . . the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or func-

---

*Are you listening, Howard Jarvis?

tions." Blumenschein v. Pittsburgh Housing Authority, 379 Pa. 566, 573, 109 A. 2d 331 (1954). A host of cases have adopted that standard in assessing the actions of school boards.

"In order for a court of equity to grant relief, it must clearly be shown that the school board acted outside the scope of its statutory authority or not in good faith. 'It is only where the Board transcends the limits of its legal discretion that it is amenable to the injunctive processes of a court of equity: . . .' Spann v. Joint Boards of School Directors, 381 Pa. 338, 349, 113 A. 2d 281, 287 (1955)." Landerman v. Churchill Area School District, 414 Pa. 530, 534, 200 A. 2d 867 (1964). See also, Zebra v. Pittsburgh School District, 449 Pa. 432, 296 A. 2d 748 (1972); Kennedy v. Ringgold School District, 10 Pa. Commonwealth Ct. 191, 309 A. 2d 269 (1973); Frantz v. Baldwin-Whitehall School District, 8 Pa. Commonwealth Ct. 639, 304 A. 2d 530 (1973).

While the board members had varying understandings of the meaning of the resolution, and, as noted earlier, their concern about the role which excess interest was to play in the funding of the resolution displayed an ignorance of the true fiscal picture, the action taken was neither arbitrary nor capricious.

It is not for this court to overrule the action of the board because in retrospect, some members were ignorant of relevant facts or because of differing notions as to the meaning of the action taken. No case in support of such proposition has been cited nor can this court find any. The money was available and the evidence discloses careful attention was paid to the amount to be paid to each employe as well as to the total cost as witnessed by the discussions which took place in four meetings over a

period of two months. That those discussions did not concern specifics as to the spiraling cost of living and were not otherwise as comprehensive as plaintiff taxpayers would have liked in the discharge of their business is not controlling. The burden of showing a clear abuse of discretion by the board is a heavy one: Landerman v. Churchill Area School District, supra; Dochenetz v. Bentworth School District, 6 Pa. Commonwealth Ct. 173 (1972); Allen v. Uniontown Area School District, 4 Pa. Commonwealth Ct. 183, 285 A. 2d 543 (1971). The exercise of discretion of necessity presupposes some latitude in determining what factors are relevant to a decision as well as the extent of factual inquiry into such factors.

But that is not the end of the matter. Section 1152 of the Public School Code, 24 P.S. § 11-1152, reads as follows:

"In addition to the salaries provided for by this act, the board of directors of each school district is hereby authorized to *grant temporary or emergency increases in salaries to members of its teaching or supervisory staff* for any period, and to discontinue such increases at the end of the period for which the same were granted, any law to the contrary notwithstanding. In order to pay the amount of salary hereby provided for, the board of school directors of any school district may revise its budget by increasing its appropriation or appropriations for salaries of members of the teaching and supervisory staffs of the school district for any year. The funds therefor shall be provided from unexpended balances in existing appropriations, from unappropriated revenue, if any, or from temporary loans. . . ." (Emphasis supplied.)

Nowhere in the code is there any other statutory authority for the payment contemplated by the resolution. Section 610 of the act, 24 P.S. §6-610, makes the expenditure of school district funds for any purpose "not provided in this Act" illegal. Defendants nevertheless argue that the payment of $300 to "all active, regular Wissahickon School District Employees" is proper, relying on the Public Employe Relations Act (PERA) of 1970. That act in section 101(2) "[requires] public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining." Section 701, 43 P.S. §1101.701, requires "the public employer and the representative of the public employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment . . . but such obligation does not compel either party to agree to a proposal or require the making of a concession."

The collective bargaining agreement between the school district and the Wissahickon Skilled Services Organization in D.7 provides: "The board of school directors upon recommendation of the chief school administrator, reserves the right to make any upward salary adjustment deemed to be necessary for the good of the school district." A similar provision is contained in the agreement between the district and the teachers, the Wissahickon Education Association, and in the agreement with the administrators. Since wages are a bargainable item under section 701 of PERA, defendants argue that the $300 payment to the non-teaching and non-supervisory personnel is proper.

They rely on decisions of the appellate courts of this Commonwealth concerned with the enforceability of provisions of collective bargaining agreements where the issue is whether a particular term of agreement violates the Public School Code of 1949. The case of Pennsylvania State Education Association v. Baldwin Whitehall School District, 30 Pa. Commonwealth Ct. 149, 372 A. 2d 960 (1977), considered an agreement providing for a retirement allowance computed on the basis of accumulated sick leave. The issue was whether such an agreement ran counter to the school code and the court in deciding that it did not, resolved the issue in the following language, at p.153:

"Neither he [i.e., the Auditor General] nor any other party . . . has directed our attention to any specific authority in the Code which either expressly provides for, or expressly prohibits, the payment of retirement allowances. Nor has our independent research delivered any such express statutory provision. We believe, however, that such authority exists, and has been recognized by our Supreme Court as a necessary implication of the interaction between the Public School Code of 1949 and the Public Employe Relations Act (PERA)."

Defendants argue that the board and the employes' representative could have properly contracted for an automatic cost of living provision in the contract (a proposition conceded for present purposes), so this $300 payment, being similar, is valid as it implements the upward salary adjustment provision of D.7. But PERA's "interaction" with the Public School Code of 1949 presupposes an enforceable contractual provision benefiting the employes in the collective bargaining agreement.

The provision relied upon by defendants simply does not do so. Although the application of the upward salary adjustment provision is somewhat obscure, it clearly was not put there for the benefit of the union because it can be implemented only by the board. Since D.6 and D.8 of the agreement with Skilled Services relate to promotions for satisfactory performance and to a higher job classification, the reasonable inference is the clause was designed to permit the administration to promote without fear of violating the union contract. To suggest it supports the payment contemplated here flies in the face of the words themselves. As a contractual provision of advantage to the union, it is illusory and as such no support for the payment.

The issue is not whether wages or salary are bargainable under the 1970 act, because beyond question they are a proper subject of bargaining, but whether in the absence of a bargain, the school board is authorized to make the payment in view of section 1152 of the Public School Code. It is because the contemplated payment was not part of the collective bargaining agreement that section 1152 has any relevance at all. If there were a provision in the contract calling for such a payment, it would have no bearing. It only comes into play when a board considers "grant(ing) temporary or emergency increases." If the union contract requires the payment it is not a temporary or emergency increase but a bargained for obligation of the board for which services have been or will be rendered.

There is no such binding obligation in this contract so the limitations of section 1152 control and are in fact reinforced by section 703 of PERA which prohibits provisions in a collective bargaining agreement "in violation of, or inconsistent with, or in conflict with any statute. . . ."

## DECREE NISI

And now, March 31, 1980, defendants, the Wissahickon School District and Robert Moore, Phyllis Catz, Richard Thornton, Jacqueline Shulman, Theodore Thompson, James Woods, Robert Russell, Donald Richwagen and Robert Correnty, Directors of the Wissahickon School Board, are enjoined from disbursing funds pursuant to the resolution of December 3, 1979.

This decree shall become the final decree of the court unless exceptions are filed within ten days of this date.