53 A.3d 705

Diane TELLY, Suzanne Clarke, Jennifer Crocus, Susan Paff, Judith Patton, Kathleen Percetti, Patricia H. Siwert, and Sue Snyder

v.

## PENNRIDGE SCHOOL DISTRICT BOARD OF SCHOOL DIRECTORS.

Sherry Labs, Denise Betts, Nancy Jones, Carol Scarborough, Kari Williams Tysinski, Dorothy Campana, and John P. Mohan

v.

Central Bucks School District Board of School Directors

New Britain Township, Intervenor

Warrington Township, Intervenor.

Appeal of Diane Telly, Suzanne Clarke, Jennifer Crocus, Susan Paff, Judith Patton, Kathleen Percetti, Patricia H. Siwert, Sue Snyder, Sherry Labs, Denise Betts, Nancy Jones, Carol Scarborough, Kari Williams Tysinski, Dorothy Campana, and John P. Mohan, Diane Telly, Suzanne Clarke, Jennifer Crocus, Susan Paff, Judith Patton, Kathleen Percetti, Patricia H. Siwert, and Sue Snyder

v.

Pennridge School District Board of School Directors.

Sherry Labs, Denise Betts, Nancy Jones, Carol Scarborough, Kari Williams Tysinski, Dorothy Campana, and John P. Mohan

v.

Central Bucks School District Board of School Directors

New Britain Township, Intervenor

Warrington Township, Intervenor.

Cross Appeal of New Britain Township, Intervenor.

Supreme Court of Pennsylvania.

Argued March 6, 2012.

Decided Aug. 20, 2012.

474

---

Terry W. Clemons, Clemons Richter & Reiss, P.C., Doylestown, for Amicus Curiae, Bucks County Association of Township Officials.

David Russell Getz, Harrisburg, Thomas L. Winger, Wix, Wenger & Weidner, P.C., for Amicus Curiae, Pennsylvania State Association of Township Supervisors.

Michael Alan Klimpl, Doylestown, for Amicus Curiae, Board of Bucks County Commissioners.

Stuart Lee Knade, PA School Board's Association, Inc., for Amicus Curiae, Pennsylvania School Board Association.

Thomas Eric Panzer, McNamara, Bolla, Williams & Panzer, Doylestown, for Amicus Curiae, Pennsylvania State Tax Collectors Association.

William H.R. Casey, Doylestown, for Warrington Township.

John Bernard Rice, Grim, Biehn & Thatcher, P.C., Perkasie, for New Britain Township.

Barbara Renk Merlie, Michael Joseph Savona, Friedman, Schuman, Applebaum, Nemeroff & McCaffery, P.C., Jenkintown, for Diane Telly, et al.

Jeffrey P. Garton, Begley, Carlin & Mandio, L.L.P., Langhorne, for Central Bucks School District Board of Directors.

Howard Lee Kelin, Kegel, Kelin, Almy & Grimm, L.L.P., Lancaster, for Pennridge School District Board of School Directors.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

This appeal concerns the propriety of resolutions adopted by two school boards that reduce the compensation rates for elected tax collectors in an effort to adopt alternative collection methods, such as lockbox systems or tax collecting agencies.

## I. Background

In 2009, the boards of school directors of the Pennridge School District ("Pennridge") and the Central Bucks School District ("Central Bucks") (collectively, the "School Districts"), passed resolutions reducing the compensation rates for their respective elected tax collectors. The Pennridge Resolution set the compensation for the Pennridge Tax Collectors for the period of 2010 through 2013 at $0.70 per tax bill, a 69% decrease from the previous tax collection rate of $2.25 per tax bill. *See* Resolution Establishing Tax Collector Compensation, Procedures and Rules at 1 ("Pennridge Resolution"); N.T., July 27, 2009, at 47. The new compensation rate was established by reference to the cost of collecting taxes directly through a bank lockbox system, which entails a significant amount of automation and computerization. *See* Pennridge Resolution at 1. Additionally, the Pennridge Resolution permitted tax collectors to disclaim their responsibilities in favor

of direct collection by the school district and thereby forfeit receipt of compensation. *See id.*[1]

The Central Bucks Resolution, which was passed three days later, set compensation for Central Bucks Tax Collectors for the period of 2010–2011 at $0.72 per tax bill; for 2011–2012 at $0.81 per tax bill; for 2012–2013 at $0.91 per tax bill; and for 2013–2014 at $1.01 per tax bill. *See* Procedures for Collecting School Taxes and Remuneration at 2 ("Central Bucks Resolution"). This reduced tax collectors' compensation by 79%, as they were formerly paid $3.50 per bill. *See* N.T., Aug. 27, 2009, at 30. The Central Bucks Resolution also gave tax collectors the "option . . . to appoint a School District designated collector as the tax collector." Central Bucks Resolution at 2. The School Districts justified the reduced compensation rates based on budgetary concerns, which had also prompted them to eliminate teacher and educational aide positions, impose teacher hiring and spending freezes, and reduce transportation options for students. *See* N.T., Aug. 28, 2009, at 196; N.T., Sept. 18, 2009, at 107–08.

Eight Pennridge and seven Central Bucks tax collectors, each candidates for reelection to their respective positions (the "Tax Collectors"), filed separate complaints for permanent injunctive relief and concomitant petitions for preliminary injunctions, arguing that the common pleas court should set aside the resolutions adopted by the School Districts because the Tax Collectors could not provide the statutorily-mandated services at the new rates of compensation. After the School Districts filed answers in each matter, the court consolidated the cases. Warrington and New Britain Townships were

1. The resolution contained the following disclaimer:

Tax Collector Option to Disclaim. Elected tax collectors have the option of disclaiming responsibility for collection of school taxes, thereby allowing direct collection by the school district. If an elected tax collector disclaims, the tax collector will have no responsibility with respect to school taxes, and therefore no compensation will be paid to the tax collector. The disclaimer by an elected tax collector shall be on a form provided by the school district and must be signed and delivered to the school district by November 30 of the year in which the tax collector is elected.

Pennridge Resolution at 1.

allowed to intervene, as the Tax Collectors collect taxes not only for the School Districts, but also for the county and sixteen municipalities.

The case was argued before the Honorable Clyde W. Waite, and, over the course of several court sessions, twelve tax collectors testified. Two tax collectors served as lead witnesses: Diane Telly from Hilltown Township, who collects taxes for Pennridge; and Sherry Labs from Plumstead Township, who collects taxes for Central Bucks. Pennridge Tax Collectors Suzanne Clark, Jennifer Crocus, Susan Paff, Judith Patton, Kathleen Percetti, Patricia Siwert, and Sue Snyder affirmed that Telly's testimony was an accurate representation of the job of tax collector. *See* N.T., July 27, 2009, at 178, 184, 192, 204, 218, 225, 232. Similarly, Denise Betts, Dorothy Campana, and Nancy Jones testified that Labs and Telly's testimony reflected their experiences as tax collectors in Central Bucks. *See* N.T., Aug. 27, 2009, at 109, 126, 145. The parties also stipulated that three additional Central Bucks' Tax Collectors, John Mohan, Carol Scarborough, and Kari Williams Tysinski, would agree that Labs and Telly's testimony reflected their experiences in the position. *See id.* at 152–53, 156.

Telly testified that serving as a tax collector had provided her with full-time employment for the previous four years. In terms of qualifications, she explained that there are age and residency restrictions and that, while not required by statute, many collectors, such as herself, pursue qualified tax collector status by completing certain coursework and maintaining continuing education credits. *See* N.T., July 27, 2009, at 50–51; 72 P.S. § 5511.4a. She also explained that tax collectors are required by law to take an oath of office and secure a bond covering the estimated amount of taxes charged in the appropriate district. *See* N.T., July 27, 2009, at 52; 72 P.S. § 5511.4.

With regard to her duties, Telly explained that her tasks generally fit into three categories: tax collection; accounting and reconciliation of tax reports; and customer service. *See* N.T., July 27, 2009, at 31. She acknowledged that, while there

are off-peaks throughout the year, she spends an average of 32–hours per week collecting real estate taxes, and at times hires an assistant to help handle the workload. In total, she estimated that the job requires approximately 1,800 hours per year. *See id.* at 45. When asked how she allocates her time among the various tax collecting duties, Telly testified that she devotes approximately one-third of her time to processing tax bills and depositing payments and two-thirds of her time to handling the accounting aspects of tax collection and providing customer service to taxpayers. *See id.* at 43. In regards to the accounting aspects of the job, Telly testified that accounting and reconciliation is done on a daily basis, and that she must submit monthly detailed reports to the township, school, and county. She also testified that at the end of the year there is reconciliation for final liens. *See id.* at 40. As to customer service, Telly explained that she receives approximately 2,000 calls a year regarding various inquiries, such as interim bills, installment plans, the homestead reduction, and tax certifications. *See id.* at 43.

As to compensation, Telly stated that tax collectors are paid separately by the three taxing entities: the county, the township, and the school district. She further testified that the eight tax collectors for Pennridge collect $72 million of the district's approximate $110 million budget, and, for this service, the School District compensates them with an aggregate amount of $44,571.75. *See id.* at 67, 76. As for her part, Telly testified that she had personally collected more than 5,500 tax bills in 2008, which amounted to $25 million in school taxes, and was paid $12,876.00. *See id.* at 32, 38, 75. Under the Pennridge Resolution, however, she estimated that her compensation would decrease to $3,860.00 for the same amount of work. *See id.* at 121.

Labs testified that she served as a full-time tax collector for twelve years, performing duties similar to those described by Telly. She noted, however, that she also maintains a website where her constituents can obtain information and file their taxes electronically. *See* N.T., Aug. 27, 2009, at 15–16. Pertaining to school district taxes, Labs stated that the seven

Central Bucks tax collectors collect nearly $200 million of the School District's $279 million budget, and that their aggregate compensation under the current scheme is $149,898.00. *See id.* at 33. Labs also testified that she is personally responsible for 4,863 parcels, which amounts to $22 million in school taxes. She indicated that she was previously paid $17,162.00 for this work, but that, under the Central Bucks Resolution, she would only be compensated. $3,500.00 for the same duties. *See id.* at 60.

Notably, when asked whether they would continue to serve in the event that compensation was decreased as set forth in the adopted Resolutions, most of the Tax Collectors expressed skepticism and voiced concern as to the level of service that would be provided to the taxpayers under an alternate system. *See* N.T., July 27, 2009 at 181, 209, 221, 228, 235–36; N.T., Aug. 27, 2009, at 62, 114, 133, 149. *But see* N.T., July 27, 2009, at 188, 198 (testimony of Jennifer Crocus and Susan Paff) (expressing an unwillingness to resign in light of a tax collectors' commitment to serve the community). In this regard, Telly testified that she would most likely have to resign from her position, as it would actually cost her money to collect taxes at the newly-adopted rate. *See* N.T., July 27, 2009 at 109, 120.

School district administrators, including the business administrators for each School District, also testified. For Pennridge, Robert W. Reinhart testified that, after consulting with several other school districts, Pennridge planned to implement a lockbox system. He explained that, under such a system, the county or school district would print real estate tax bills and the School District's business office would then mail them to constituents. Taxpayers would make checks payable to the Pennridge School District or the individual tax collector and either send them to a post office box or deliver them in person to the bank operating the box. The bank would then scan the checks and deposit the payments directly into the school district's account. Each day, a clerk in the business office would download the data provided by the bank, allowing for an automatic reconciliation against the original tax bills provided

by the county. *See* N.T., Sept. 18, 2009, at 105–06. Based on proposals submitted by financial institutions, Reinhart explained, Pennridge estimated that it would save $50,088.00 per year by implementing a lockbox system, notwithstanding an additional 120 hours of secretarial help needed for implementation of the new system. *See id.* at 75, 97.

Central Bucks' business administrator, David W. Matyas, testified that the school district considered collecting taxes through a commercial tax collection agency, such as Berkheimer Tax Administrator, Inc. ("Berkheimer"). Based on Berkheimer's presentation to the Central Bucks Finance Committee and the school board, Matyas estimated that the school district would save $558,900.00 over a four-year period if it switched to using an outside taxing agency. *See* N.T., Aug. 28, 2009, at 221. Matyas also noted that the tax collector compensation rates set in the Central Bucks Resolution were commensurate with the quotes obtained from commercial tax collection agencies. *See id.* at 211–20.

Judge Waite ultimately determined that the standards used by the School Districts to calculate compensation rates for the Tax Collectors were arbitrary, rendering the resolutions void. Consequently, he granted the Tax Collectors' request for a permanent injunction and ordered the School Districts to reinstate the prior tax collector compensation rates. In his opinion, Judge Waite observed that, under the Local Tax Collection Law, *see* 72 P.S. §§ 5511.1–5511.42 (the "LTCL"),[2] elected tax collectors are required to collect all taxes levied by taxing authorities, with the exception of those imposed pursuant to the Local Tax Enabling Act,[3] including real estate taxes assessed by counties, local municipalities, and school districts. *See* 72 P.S. § 5511.2. Judge Waite noted that the LTCL does not set rates of compensation for tax collectors in counties, boroughs, or second class townships, but rather allows the local taxing authority to determine such rates, subject to a

2. Act of May 25, 1945, P.L. 1050, (as amended, 72 P.S. §§ 5511.1–5511.42).

3. Act of Dec. 31, 1965, P.L. 1257 (as amended, 53 P.S. §§ 6924.101–6924.901).

maximum amount. *See* 72 P.S. § 5511.35(a)(1). Significantly, as to school district taxes, the court explained, the LTCL provides the board of school directors with the authority to set tax collector compensation rates, *see* 72 P.S. § 5511.35(a)(3), and permits the taxing entities to adjust the pay of elected tax collectors by ordinance or resolution, prior to municipal elections, *see* 72 P.S. § 5511.36a.[4]

In further support of its ruling, the court cited to *Abington School District v. Yost*, 40 Pa.Cmwlth. 312, 397 A.2d 453 (1979), in which the Commonwealth Court affirmed an injunction preventing a school district from enforcing a resolution that drastically reduced the salaries of elected tax collectors and assigned the responsibility for collecting school taxes to a bank in combination with school district employees. Judge Waite explained that the *Yost* court examined the LTCL and noted that:

> It was, of course, the Legislature's intention that the amounts of compensation of tax collectors fixed by the local taxing districts pursuant to Section 36.1 [of the LTCL] should be reasonable. There is not the slightest indication that the Legislature intended that local taxing authorities should have the power to reduce compensation as a means of reforming to their satisfaction the system of local tax collections, already comprehensively provided for in the statutes.

*Yost*, 397 A.2d at 456–57. Continuing, Judge Waite noted that, in *Yost*, the court explained that school districts are "creatures or agencies of the Legislature" with "no inherent powers of government," but rather possess only the "powers, functions, and duties" expressed or necessarily implied by statute. *Id.* at 457. The court also cited the *Yost* court's observation that, while some school boards have the authority

---

4. Section 5511.36a, provides that:

> When any taxing district or taxing authorities propose to either raise or reduce the compensation or salary for the office of an elected tax collector, such action shall be by ordinance or resolution, finally passed or adopted prior to the fifteenth day of February of the year of the municipal election.

72 P.S. § 5511.36a.

to appoint collectors for school taxes where the office is vacant, the school districts are not empowered to create such a vacancy by reducing the rate of compensation to a level so low that the tax collectors could not perform their statutory duties. *See id.* at 456. Accordingly, the trial court explained, the *Yost* court held that the school district misapplied the law. *See id.* at 456–57.

Further, Judge Waite observed that, while the LTCL provides school boards with the power to set the compensation rates for tax collectors, it does not specify the rate at which elected tax collectors should be compensated, thereby creating a latent ambiguity. The court observed that the LTCL pits the fundamental interests of two sets of elected officials against one another: the Tax Collectors have the duty to effectively and efficiently collect taxes as well as perform all of the duties implicit in that task, whereas the School District has the responsibility to ensure that its funds are appropriated in an efficient manner, including the implementation of cost-effective technologies. Consequently, the court reasoned, such considerations must be balanced when determining how compensation rates should be calculated.

In this regard, the court questioned the standard applied by the Pennridge and Central Bucks School Districts:

Under the circumstances, the Tax Collectors remained statutorily bound to perform the services explicitly commanded by the statute along with those services implicit therein at the rates set by an outside entity who had no obligation to follow through and provide even the redacted services outlined in their proposals. Thus, if the standard for setting the fees and compensation to be paid to the Tax Collectors is that set by outside entities, the School Districts are then empowered to command the performance of statutory duties by the Tax Collectors at unrealistic and impracticable rates of compensation.

*See Telly v. Pennridge Sch. Dist. Bd. of Sch. Dirs.*, No. 2009–04824–31, *slip op.* at 6–7, 2009 WL 8637791 (C.P.Bucks, Dec. 4, 2009). This interpretation of the LTCL, the court found, would lead to an absurd result, contrary to the Legislature's

intent. *See id.* at 7; *see also* 1 Pa.C.S. § 1922. Instead, the court determined that the "market" rate of compensation for tax collectors is that which "a reasonably effective and efficient elected tax collector requires to perform the traditional and accepted services performed in the tax collection by elected tax collectors." *Telly,* No. 2009–04824–31, *slip op.* at 8.[5] Thus, the court concluded that the standards utilized by the School Districts, namely, comparison to lockbox and outside vendor costs, were arbitrary. *See id.* at 9.

The School Districts appealed to the Commonwealth Court, arguing that the trial court erred in determining that the LTCL requires a school board to set compensation rates based on the traditional and accepted services performed by elected tax collectors. Instead, the School Districts maintained that they appropriately exercised discretion in lowering tax collector compensation rates based on the cost of collecting taxes using modern, cost-efficient technology.

The Commonwealth Court agreed with the School Districts and reversed, concluding that the elected tax collector is entirely dependent on the discretion of the school board to receive a reasonable rate of compensation for undertaking the obligations imposed by the LTCL. *See Telly v. Pennridge Sch. Dist. Bd. of Sch. Dirs.,* 995 A.2d 898, 905 (Pa.Cmwlth.2010). To begin its analysis, the panel acknowledged that the LTCL provides little guidance to taxing districts concerning how much compensation is fair or reasonable for elected tax collectors and noted that neither the LTCL nor the Public School Code of 1949[6] supply a remedy for either a school board's

---

5. In his separate findings of fact and conclusions of law, Judge Waite worded the inquiry as follows:

the appropriate standard to be applied when determining what a reasonable market rate of compensation should be for elected tax collectors is the universe of similarly situated elected tax collectors performing the established and traditional customer services that the electors have determined they wish to receive as established by their elected legislature.

*See Telly v. Pennridge Sch. Dist. Bd. of Sch. Dirs.,* No. 2009–04824–31, *slip op.* at 71, 2009 WL 8637793 (C.P.Bucks, Oct. 9, 2009).

6. Public School Code, Act of March 10, 1949, P.L. 30 (as amended, 24 P.S. §§ 1–101–27–2702).

failure to pay compensation to an elected tax collector or its adoption of a compensation rate that is grossly unreasonable.

According to the panel, the Commonwealth Court has afforded school boards broad discretion on the issue of setting compensation rates, only overturning their decisions where the boards have acted beyond their lawful purpose. *See, e.g., Yost,* 397 A.2d at 457; *Penn–Delco Sch. Dist. v. Schukraft,* 95 Pa.Cmwlth. 619, 506 A.2d 956, 961 (1986) (barring the enforcement of school board resolutions that adopted a "lockbox" system for collecting taxes and lowered the salaries of elected tax collectors to $1.00 per year). The panel noted, however, that where the elected tax collectors disagree with the offered rate of compensation, but have not established bad motive or ill intent, the court has upheld the school district's decision. *See Telly,* 995 A.2d at 903.[7] The Commonwealth Court distinguished *Yost,* explaining that the resolution in that case was problematic because the tax collectors were prohibited from collecting school taxes. In response to that decision, the panel explained, school districts modified their approach by providing incentives to tax collectors to relinquish their duties and appoint the school districts as deputy tax collectors. *See id.* at 904. The Commonwealth Court did not invalidate these acts, the panel continued, since the LTCL explicitly permits an elected tax collector to appoint a deputy. *See* 72 P.S. § 5511.22.

Instead, the court found guidance in *Hollidaysburg Area School District Tax Collectors v. Hollidaysburg Area School District,* 660 A.2d 245 (Pa.Cmwlth.1995), which held that there was no abuse of discretion in a school district resolution that

7. *See also Mohn v. Governor Mifflin Sch. Dist.,* 84 Pa.Cmwlth. 337, 479 A.2d 1158, 1161 (1984) (approving a school board measure that decreased elected tax collectors' salaries to as little as $0.10 per tax bill collected and permitted them to deputize a bank, selected by the school district, to serve as the actual collector of taxes, with the school board assuming the burden of preparing and mailing tax bills); *Means v. Twin Valley Sch. Dist.,* 84 Pa.Cmwlth. 271, 479 A.2d 663, 665 (1984) (upholding a school board resolution that reduced elected tax collectors' salaries to as little as $0.20 per tax bill collected and allowed, but did not require, tax collectors to deputize a representative of an established institution).

reduced the compensation rate for tax collectors by 70%. In that case, the Commonwealth Court reasoned that, while the tax collectors had demonstrated that the new rate of compensation would be financially detrimental, they did not show that the school district had acted with an improper motive or intent. *See id.* at 247. In reaching its holding, the *Hollidaysburg* court noted that evidence concerning tax collectors' duties, the time spent on those duties, or the detrimental impact of the new compensation rate, was irrelevant to their inquiry because such facts did not establish bad faith or a lack of statutory authority on the part of the district. *See id.*

In rejecting the Tax Collectors' attempt to distinguish *Hollidaysburg* on the ground that the School Districts' decreased compensation rates evidenced bad faith because their purpose was to force the Tax Collectors to disclaim their statutory obligations, the intermediate court observed that the Resolutions did not require the Tax Collectors to forego their tax collection duties entirely. *See Telly,* 995 A.2d at 905. Instead, the court noted, the reduced compensation rates were based upon studies conducted in order to reduce costs, enabling the School Districts to meet their budgets and avoid raising taxes. *See id.* The court thus concluded that the Tax Collectors had not demonstrated that the School Districts acted with bad faith. The Commonwealth Court, however, voided the portion of the Pennridge Resolution that permitted elected tax collectors to disclaim their responsibility for collecting taxes, as it found that such an option contravened the express terms of Section 5511.22 of the LTCL. *See* 72 P.S. § 5511.22 ("Any tax collector, appointing any deputy collector, *shall be responsible for* and account to the taxing district for all taxes received or collected by his deputy.") (emphasis added).

More generally, the court explained that the School Districts have broad discretion in establishing compensation rates for elected tax collectors and that the trial court erred by creating its own standard requiring the school boards to compensate elected tax collectors based upon the compensation rates of other school districts. The court reasoned that,

"[i]t does not matter that a school board bases its compensation rates for elected tax collectors on whether taxes are collected through a bank lockbox system, so long as the elected tax collectors are not deprived of the option to collect taxes at the new rates." *See Telly*, 995 A.2d at 906. Rather, the Commonwealth Court continued, the Tax Collectors had the burden of proving that the School Districts' actions were arbitrary and capricious, a standard that they could not meet, given the School Districts' purpose to use efficient and cost-effective technology for tax collection. *See id.*

## II. Arguments

Presently, the Tax Collectors argue that the Commonwealth Court improperly rejected the standard adopted by the trial court and erred in employing a bad faith test to measure the reasonableness of the rate of compensation paid to elected tax collectors. The Tax Collectors contend that the bad faith standard:

[F]ails to acknowledge the need to reconcile the LTCL and the Public School Code; fails to adequately consider the value of the services provided by tax collectors to their constituents; and fails to recognize the dramatic effect that granting virtually unbridled discretion to school districts will have upon the legislatively mandated system of real estate tax collection.

Brief for Appellants at 18.

The Tax Collectors maintain that the trial court correctly determined that the School Districts acted arbitrarily and capriciously in setting tax collector compensation rates. They observe that the LTCL and the Public School Code provide little guidance on the issue and that the "effort by the School Districts to shift the tax collection function from the elected tax collector to an outside party or to the School District itself is neither new nor novel." Brief for Appellant at 20. The Tax Collectors argue that, since the late 1970s, Pennsylvania school boards have attempted to circumvent the LTCL's legislative mandates to devise alternative means of collecting school taxes by manipulating the compensation rates. *See id.*

at 21. In response to these efforts, the Tax Collectors note that the courts have concluded that "the amounts of compensation of tax collectors fixed by the local taxing districts ... should be reasonable" and that the Legislature did not intend for local taxing authorities to have the power to reform the local tax collection system by manipulating compensation rates. *Yost*, 397 A.2d at 456–57.

As to the standard for determining compensation rates, the Tax Collectors favor an analysis of similarly-situated elected tax collectors performing comparable tasks. The Tax Collectors maintain that the public services they provide must be factored into any compensation calculation, as the Legislature has determined that tax collectors should remain elected officials, presumably so that they are answerable to their constituents. Here, the Tax Collectors explain, in setting the new, reduced compensation rates, the School Districts did not consider the full panoply of a tax collector's duties, and instead considered clerical tasks, which consume only one-third of a tax collector's time. Under the proper analysis, the Tax Collectors aver, the current tax collection methods are the most efficient and cost effective. In support of this contention, the Tax Collectors reference a June 2011 study by the Legislative Budget and Finance Committee, a Joint Committee of the Pennsylvania General Assembly, which concluded that the collection of real estate taxes by local tax collectors is more cost effective than any alternative system, including direct collection by counties or school districts. *See generally* LEGISLATIVE BUDGET AND FIN. COMM., PENNSYLVANIA'S CURRENT REAL PROPERTY TAX COLLECTION SYSTEM CONDUCTED PURSUANT TO SENATE RESOLUTION 2010–250 (June 2011). In addition to a financial advantage, the Tax Collectors note, as elected officials, they provide important public services by acting as community liaisons and assisting local government. *See* Brief for Appellant at 27.

Moreover, the Tax Collectors argue that the Commonwealth Court's failure to consider the potential detriment to the functionality of the tax collection system resulting from reductions in compensation is contrary to public policy. In this

regard, the Tax Collectors reason that the General Assembly created the office of tax collector in the first instance and that such individuals perform vital public functions, such as interacting with constituents, rendering assistance and aid to the elderly, answering tax questions related to individual payment receipts, tax duplicates, and interim tax information. Thus, the Tax Collectors conclude:

> These individuals, often the sole point of consistent contact with every tax-paying property owner in each municipality, stand alone and now virtually uncompensated by the school district who relies on them to collect sometimes hundreds of millions of dollars in real estate tax revenues.

Brief for Appellant at 27.

Intervenor, New Britain Township ("New Britain"), also expresses concern that, if the Court adopts the Commonwealth Court's decision, "it will result in the state-wide elimination of the office [of tax collector] on a district-by-district basis," a result not permitted absent legislative action. Brief for Intervenor New Britain Township at 26. New Britain argues in favor of basing tax collector compensation rates on a local authority's good faith attempt to compensate tax collectors for the value of their services, rather than on proposals from outside commercial entities. Furthermore, New Britain supports the proposition that, while not required by the statute, constituents expect their elected officials to be available to take telephone calls and respond to or discuss policy concerns. *See id.* at 25.

*Amicus,* Pennsylvania State Association of Township Supervisors ("PSATS"), highlights that, under the present system, taxpayers only have to communicate with one collector for their county, municipal, and school taxes. PSATS avers that if each school district can create its own tax collection system, then so may each county and municipality, forcing constituents to deal with three different, unelected entities instead of one elected official. *See* Brief for *Amicus* PSATS at 14. PSATS reiterates that the courts have made clear that school districts cannot rewrite state law to suit their own purposes. *See id.* at

18; *Black v. Duquesne Borough Sch. Dist.*, 239 Pa. 96, 86 A. 703 (1913).

In further support of this position, *Amicus,* Bucks County Association of Township Officials ("BCATO"), argues that tax collector compensation must be "reasonable," else the level of compensation will accomplish "a wholesale change in the system of real estate collection by ... forc[ing] tax collector resignations or unwillingness to run for office—something that has not been sanctioned by the General Assembly and should not be sanctioned by this Honorable Court." Brief for *Amicus* BCATO at 11. This reasonableness assessment, BCATO explains, should be based on job duties, hours worked, and certifications obtained. *See id.* at 13. Similarly, *Amicus,* Pennsylvania State Tax Collectors Association, notes that the trial court had sufficient information to evaluate whether the proposed rates of compensation would be commensurate with the Tax Collectors' responsibilities and found that the School Districts' proposed market rates were insufficient. *See* Brief for *Amicus* Pennsylvania State Tax Collectors Association at 15.

In opposition, the School Districts maintain that the Commonwealth Court properly determined that they set the Tax Collectors' compensation rates within their lawful discretion and without bad faith. The School Districts observe that this Court has set a high standard for reversal of a school board's discretionary decision:

> [T]he exercise of discretion by the school authorities will be interfered with only when there is a clear abuse of it, and the burden of showing such an abuse is a heavy one. In those few instances where the court has interfered with the administrative power of school boards, the interference was based on the school boards' manifestly illegal action in violating the express words of statutes defining their powers, or on facts clearly indicating bad faith and violation of their public duty.

*Wilson v. Sch. Dist. of Philadelphia,* 328 Pa. 225, 239, 195 A. 90, 98 (1937). The School Districts argue that the Court has steadfastly applied this rigid standard, and has acknowledged

the inappropriateness of acting as a "super school board." Brief for Appellees at 30–31. Continuing, the School Districts contend that, consistent with this standard, the Commonwealth Court has ruled that a reduction in tax collector compensation is lawful unless the school board: 1) acts illegally by prohibiting elected tax collectors from collecting taxes; or 2) acts in an arbitrary and capricious manner by reducing compensation without any rationale for doing so. *See, e.g., Hollidaysburg*, 660 A.2d at 247; *Penn–Delco Sch. Dist.*, 506 A.2d at 960; *Yost*, 397 A.2d at 457.

The School Districts maintain that, unlike *Yost*, the Resolutions presently at issue did not prohibit tax collectors from collecting taxes, but instead permitted the Tax Collectors to choose either to remain in their position or to exercise the option to appoint a deputy. *See* 72 P.S. § 5511.22. Similarly, the School Districts contend that the reductions were not made arbitrarily or capriciously; rather, the decrease in the Tax Collectors' compensation was the result of a reasoned and deliberative process. The School Districts explain that their business administrators studied the issue extensively and obtained information on cost-efficient technology. Additionally, the School Districts note that both school boards presented the issue at public meetings to address any concerns. *See* Brief for Appellee at 41. Further, the School Districts state that their decisions to lower tax collector compensation were not motivated by malice, but rather were designed to save taxpayer dollars during a time of fiscal constraint. To effect this purpose, the School Districts aver, tax collector compensation should be based on a market analysis of the required work in light of available, cost-efficient technology.

The School Districts also note that, even though the General Assembly has amended sections of the LTCL pertaining to tax collector compensation twice since the Commonwealth Court's decision in *Hollidaysburg*, *see* 72 P.S. §§ 5511.35 (amended in 1996), 5511.36b (amended in 2006), it did not opt to alter the discretion provided to school districts and other taxing authorities in setting such compensation. Because the General Assembly is presumed to know the extant law when it adopts

legislation, the School Districts argue that the Legislature consciously decided to leave in place the school board's broad discretion in this area. *See* Brief for Appellee at 38.

*Amicus,* Pennsylvania School Boards Association ("PSBA"), explains that many of the functions performed by the Tax Collectors go beyond their statutorily mandated duties. Thus, PSBA asserts, decreasing tax collector compensation does not displace the tax collection system, but rather reforms how the tax collectors currently perform their jobs. Further, PSBA reasons that the LTCL provides school boards with the authority to determine appropriate levels of compensation as well as the public services for which taxpayer funds should be utilized. PSBA also posits that the School Districts' decisions were the result of a studied analysis and rationale and therefore cannot be described as being made arbitrarily or capriciously. A difference in opinion regarding the adequacy of the compensation rate or the potential effect of discouraging tax collectors from seeking office, PSBA continues, does not provide a basis for disturbing the school board's determination. *See* Brief for *Amicus* PSBA at 10. Thus, PSBA concludes:

> It may well be the case that the breadth of school board discretion on this subject and the deference owed by the courts will now and then result in a compensation scheme that is less than ideal, or perhaps even unfair. But unfairness has never been the standard, and such is the overall local tax collection scheme that the General Assembly has seen fit to leave in place. . . .

Brief for *Amicus* PSBA at 11.

### III. Discussion

■ As observed by the parties, the LTCL grants school districts the power to establish and amend tax collector compensation rates. *See* 72 P.S. § 5511.35(a)(3) (providing that the "commission or compensation of the tax collector shall be determined by the board of school directors, and the total cost of such collection shall be reported annually to the Secretary of Education. . . ."); 72 P.S. § 5511.36a (authorizing school boards to adjust the pay of elected tax collectors by ordinance

or resolution, prior to municipal elections). Decidedly absent from that statute, however, is any direct guidance concerning the methods by which such rates should be calculated or evaluated. The Public School Code, which provides school directors with the authority to annually levy and collect taxes, *see* 24 P.S. § 5–507, is similarly devoid of any instructions for calculating tax collector compensation or a means by which the appropriateness of compensation rates adopted by school boards may be assessed. Thus, this Court has found that school board directors are vested with discretion in regards to setting compensation rates for the collection of school district taxes. *See Myers v. Sch. Dist. of Newtown Twp.*, 396 Pa. 542, 544, 153 A.2d 494, 496 (1959); *McKinley v. Sch. Dist. of Luzerne Twp.*, 383 Pa. 289, 293, 118 A.2d 137, 140 (1955).

■ As observed in *Yost*, however, this discretion is not without limitation, as the Legislature has not empowered school boards to use compensation levels as a means of revamping the local tax collection system. *See Yost*, 397 A.2d at 456–57. While school boards have a duty to the public to set and meet their budgets, altering the method of tax collection established by the General Assembly as a means of doing so is beyond their authority. *See Wilson*, 328 Pa. at 229, 195 A. at 94.

Notwithstanding the concerns evidenced in *Yost*, and in light of the broad discretion provided to school boards by the Legislature, courts have been reluctant to intercede in school board decision-making, and this Court has required a heavy burden of proof prior to such an exercise. *See Roberts v. Bd. of Dirs. of Sch. Dist. of City of Scranton*, 462 Pa. 464, 473, 341 A.2d 475, 480 (1975); *Landerman v. Churchill Area Sch. Dist.*, 414 Pa. 530, 534, 200 A.2d 867, 869 (1964). Indeed, this Court has observed that its review of such school policies is "restrained ... by the long-established and salutary rule that the courts should not function as super school boards." *Zebra v. Sch. Dist. of the City of Pittsburgh*, 449 Pa. 432, 437, 296 A.2d 748, 750 (1972). Thus, the Court has explained that:

[W]hile the court may not merely substitute its judgment for the Board's exercise of its discretionary power, there is

no doubt but that, when it clearly appears that the directors were guilty not merely of an error or judgment but of a misapplication of law, or a clear abuse of discretion, or arbitrary and capricious action of any kind resulting in an unlawful expenditure of public funds, the court may and should intervene for the protection of the public.

*McKinley*, 383 Pa. at 293, 118 A.2d at 140. Although prior cases have, at times, emphasized the "arbitrary and capricious" terminology, the reasoning employed in those situations has established a broader inquiry, which subsumes such considerations as bad faith, *see Regan v. Stoddard*, 361 Pa. 469, 473–74, 65 A.2d 240, 242 (1949), misapplications of the law, *see Hibbs v. Arensberg*, 276 Pa. 24, 26, 119 A. 727, 728 (1923), and whether the school board has "acted outside the scope of its statutory authority," *see Spann v. Joint Bds. of Sch. Dirs.*, 381 Pa. 338, 349, 113 A.2d 281, 286–87 (1955). *Cf. Leon E. Wintermyer, Inc. v. W.C.A.B. (Marlowe)*, 571 Pa. 189, 203–04, 812 A.2d 478, 487–88 (2002) (holding that, despite the deferential nature of judicial review of agency adjudications, "review for capricious disregard of material, competent evidence" is necessary to "assure that the agency adjudication has been conducted within lawful boundaries—[but] it is not to be applied in such a manner as would intrude upon the agency's . . . discretionary decision-making authority").

Most relevant to the present matter is the Commonwealth Court's narrow interpretation of the misapplication of the law standard. Here, the Commonwealth Court focused on whether the Tax Collectors were "deprived of the option to collect taxes at the new rates" of compensation, relying on *Hollidaysburg* to conclude that the appropriate inquiry was whether a school board resolution explicitly prohibits tax collectors from performing their statutory duties rather than an evaluation of the overall appropriateness of a newly-adopted compensation rate. *See Telly*, 995 A.2d at 906; *see also Hollidaysburg*, 660 A.2d at 247 (finding that tax collectors established that a 70% reduction in compensation would be financially detrimental to them, but failed to demonstrate bad faith or lack of authority on the part of the school board). By contrast, the decision in

*Yost* held that although the school board's adoption of an alternative tax collection scheme was well-motivated, it was a misapplication of the law to essentially eliminate the elected tax collector position and instead place tax collection in the hands of the school district and a bank. *See Yost,* 397 A.2d at 457 ("There is [no] indication that the Legislature intended that local taxing authorities should have the power to reduce compensation as a means of reforming ... the system of local tax collection....").

Precedent from this Court indicates that the broader standard applied in *Yost* is more appropriate than the narrow inquiry utilized in *Hollidaysburg,* as it is more consistent with both the language of the LTCL, *see* 72 P.S. §§ 5511.35(a)(3), 5511.36a, and the analysis referencing the statutorily-required and implicit responsibilities of the Tax Collectors as set forth by the Legislature. *See McKinley,* 383 Pa. at 294, 118 A.2d at 140; *Yost,* 397 A.2d at 456. Notably, *Yost* examined the historical context of the LTCL, specifically observing that Section 36.1, which authorizes school boards to adopt changes to tax collectors' compensation, was enacted during a post-war period where school populations and, consequently, school taxes, were rapidly increasing. *See Yost,* 397 A.2d at 456. Because at that time many tax collectors' compensation rates were based on a percentage of their collections, the sudden increase resulted in dramatically elevated payment for the performance of the same work. *See id.* Section 36.1 thus enabled school boards to adjust compensation to a reasonable level, but this grant of power did not permit school boards to eliminate the position of tax collector entirely. *See id.* at 456–57. In *Hollidaysburg,* however, although the court appropriately noted the distinction between a tax collector's dissatisfaction with the set compensation rate and compensation rates that do not allow a tax collector to perform her statutory duties, ultimately the court deemed the considerations found germane in *McKinley* and *Yost* irrelevant. *See Hollidaysburg,* 660 A.2d at 247; *see also Baker v. Cent. Cambria Sch. Dist.,* 24 A.3d 488, 494 (Pa.Cmwlth.2011) (relying on the Commonwealth Court's decisions in *Telly* and *Hollidaysburg*

to conclude that facts related to tax collectors' "duties; the time spent performing those duties; current compensation rates; and how they would be affected by the new rate" were irrelevant and therefore insufficient to survive preliminary objections).

■ Here, we conclude that the compensation rates adopted by the Pennridge and Central Bucks School Boards were so low as to deprive the Tax Collectors of the ability to perform the duties of their elected positions, rendering the Resolutions void.[8] The trial court considered the Tax Collectors' duties, the time spent on those duties, and the impact of the new compensation rates on the Tax Collectors' ability to fulfill their responsibilities. *See Telly*, No. 2009–04824–31, *slip op.* at 7. In light of these factors, the court determined that the compensation rates set forth in the Resolutions would not encompass the full scope of statutory duties and services provided by the Tax Collectors, but rather concentrated on the costs of implementing alternative collection methods through outside entities. *See* Pennridge Resolution at 1; Central Bucks Resolution at 2. With regard to the Pennridge Resolution, the trial court found that the bank would not perform certain duties, such as providing tax certifications or filing liens for overdue payments. The trial court also found it significant that, under the alternative tax collection method, there would be no customer service provided to the constituents. *See Telly*, No. 2009–04824–31, *slip op.* at 6. Similarly, the trial court found the Central Bucks Resolution lacking, as the Berkheimer proposal left important service issues undefined and eliminated services currently provided by the Tax Collectors. Importantly, the court was concerned that Berkheimer had no legal obligation to perform its services at the proposed rate. *See id.*

8.  We acknowledge and agree with the Commonwealth Court's determination that the provision of the Pennridge Resolution giving the elected tax collectors the option to disclaim their responsibility for collecting school taxes is void. *See Telly*, 995 A.2d at 905. As discussed in this opinion, however, we disagree with the court's conclusion that the Pennridge Resolution as a whole is valid, as the compensation rates it imposes effectively deprive tax collectors of the option to collect taxes in accord with their statutory duties.

We recognize the difficulties faced by the School Boards in periods of financial uncertainty, but it is beyond the boards' power to transform the local tax collection system by reducing compensation levels to such a degree that the elected Tax Collectors are unable to fulfill their responsibilities; such systematic change must come from the Legislature. *See Barth v. Sch. Dist. of Philadelphia*, 393 Pa. 557, 566, 143 A.2d 909, 913 (1958) ("We may add that a very worthy objective does not justify the action of a public body, such as a public school district, which has no inherent powers of government, unless that action is authorized by the Constitution or expressly or by necessary implication by an Act of the Legislature.").

Accordingly, we reverse the ruling of the Commonwealth Court.

Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices EAKIN and BAER, TODD and McCAFFERY join the opinion.

Justice EAKIN files a joining Concurring Opinion.

Justice EAKIN, concurring.

I concur with the majority; the compensation rates adopted by the Pennridge and Central Bucks School Boards were so low as to deprive the tax collectors of the ability to perform their basic duties. In light of the arguments made, I write to posit the caveat that we cannot permit tax collectors to unilaterally expand their role from tax collector to customer service representative and expect those self-imposed duties to be the subject of mandatory compensation. School boards clearly have the authority to reduce the rate of compensation, but not to the extent of prohibiting tax collectors from performing their *statutory* duties. School Boards need not be made to compensate for *non-statutory* duties. Customer service is a very nice thing, but when tax dollars are tight, it is a luxury item, not a statutory duty, and what is fair and reasonable compensation must be based on the statutorily-

required responsibilities of tax collectors alone. If the Board wishes to pay for more, it certainly may, but if it does not, it cannot be made to pay for more than the duties set forth by the Legislature.